# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELEN BOWER, | ) |
| | ) Civil Action No. 18-389 Erie |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NRA GROUP, LLC, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This civil action was filed on December 17, 2018 by Plaintiff Elen Bower ("Plaintiff") against Defendants NRA GROUP, LLC ("NRA Group") and five "John Doe" Defendants. Plaintiff claims that the Defendants violated her rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 et seq., in connection with their attempts to communicate with her about an alleged debt. Plaintiff filed a proof of service indicating that the complaint was served upon Defendant NRA Group on December 19, 2018, ECF No. 5; however, NRA Group has not answered the complaint. The Clerk subsequently entered default against NRA Group, pursuant to Plaintiff's request, on January 14, 2019. ECF No. 8.

Presently pending before the Court is Plaintiff's motion for default judgment against NRA Group. ECF No. 9.[1] Appended to Plaintiff's motion is a memorandum as well as the following exhibits: a proof of service of the complaint (Exhibit A, ECF No. 9-1); a certificate of service for Plaintiff's Request for Entry of Default (Exhibit B, ECF No. 9-2); a "United States Consumer Law Attorney Fee Survey Report" for 2015-2016 (Exhibit C, ECF No. 9-3); the

---

[1] Plaintiff filed a notice of voluntary dismissal of the John Doe Defendants on January 22, 2019. ECF No. 10. Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A), the Clerk is directed to terminate these Defendants as parties to this action.

1

"Declaration of Robert Amador [Plaintiff's attorney] in Support of Plaintiff's Motion for Default Judgment and Attorney's Fees" (Exhibit D, ECF No. 9-4); an itemized bill showing counsel's billing rate and time expended in the prosecution of this matter (Exhibit E, ECF No. 9-5); and a proposed order that would award Plaintiff $1,000.00 in statutory damages, $465.00 in costs, and $2,976.50 in attorney's fees.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331. For the reasons that follow, Plaintiff's motion will be granted to the extent that Plaintiff will be awarded $750.00 in statutory damages, $465.00 in costs, and $2,971.50 in attorney's fees. Accordingly, judgment will be entered in Plaintiff's favor in the amount of $4,186.50.

## I. BACKGROUND

According to the complaint, Plaintiff is a resident of Guys Mills, Pennsylvania, and NRA Group is a limited liability company with its primary place of business in Harrisburg. Compl. ¶3, ECF No. 1. During times relevant to this litigation, Defendants regularly operate as third-party debt collectors. Id. ¶6.

On or about August 13, 2018, Defendants began calling Plaintiff in an attempt to collect a consumer debt that Plaintiff allegedly owed. Compl. ¶7. On that date, a collector from NRA Group called Plaintiff's number and asked if she was speaking with Elen Bower. Id. ¶8. After Plaintiff responded in the affirmative, the caller asked Plaintiff to "verify" her address. Id. Plaintiff refused, telling the caller, "I don't know who you are." Id. The caller then identified herself as being with the "NRA Group." Id. Plaintiff indicated that the name did "not mean anything" and inquired what "NRA Group" is, to which the caller replied, "We handle personal matters." Id. Plaintiff refused to provide any personal information because she had no idea what NRA Group was or what the call was about. Id. When the caller asked Plaintiff to verify her

birthday rather than her address, Plaintiff refused, stating, "No, I'm not telling you my birthday. I don't know who you are." Id. The caller then replied, "Well, we only have to tell you who we are." Id. Not knowing what the call was about and perceiving that the collector was becoming argumentative, Plaintiff ended the call. Id. Thereafter, Defendants continued to call Plaintiff, but Plaintiff did not engage in any further communications. Id. ¶9.

Plaintiff eventually contacted an attorney, who confirmed that NRA Group was attempting to collect a $57.80 balance allegedly owed to a medical services provider. Compl. ¶¶10-11. Plaintiff avers that she had been working with her insurance company to identify any bills or co-payments for which she may be responsible. Id. ¶11.

Based upon the foregoing events, Plaintiff contends that the Defendants violated three separate provisions of the FDCPA. First, she claims that Defendants violated 15 U.S.C. §1692d(6) by failing to provide meaningful disclosure of their identity – specifically, that the August 13, 2018 communication was from a debt collector and that such communication was being made in an attempt to collect a debt. *See* Compl. ¶12 (Count I). Second, Plaintiff claims that Defendants violated 15 U.S.C. §1692e(11) by failing to disclose not only that the communication was from a debt collector in an attempt to collect a debt, but also that any information obtained could be used for that purpose. Id. ¶13 (Count II). Finally, Plaintiff claims that Defendants violated 15 U.S.C. §1692e(10) by making the misleading statement, "[W]e only have to tell you who we are." Id. ¶14 (Count III).

## II. STANDARD OF REVIEW

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). Upon the Clerk's entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be

3

taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed.1983)). However, "the Court need not accept the moving party's legal conclusions[.]" *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citations omitted). Thus, "before entering a default judgment the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Ford v. Consigned Debts & Collections, Inc*., No. 09–3102, 2010 WL 5392643, at *2 (D.N.J. Dec. 21, 2010) (quoting *Chanel,* 558 F. Supp. 2d at 535). Once a valid claim has been asserted, "[t]hree factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.85 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

**III.   ANALYSIS**

   A. <u>NRA Group's Potential Liability</u>

The FDCPA "prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995) (alteration in the original). Because the statute is remedial in nature, courts construe its language broadly, so as to effectuate its purpose. *Levins v. Healthcare Revenue Recovery Grp. LLC*, 902 F.3d 274, 280 (3d Cir. 2018).

4

In order to establish an FDCPA claim, a plaintiff must show that (1) she is a "consumer,"[2] (2) the defendant is a "debt collector,"[3] (3) the defendant's challenged practice involves an attempt to collect a "debt" as defined by the Act,[4] and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). In evaluating whether a particular debt-collection practice violates the Act, courts employ a "least sophisticated debtor" standard. *Fleming v. Associated Credit Servs., Inc.*, 342 F. Supp. 3d 563, 579 (D.N.J. 2018). "The standard is objective, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Levins*, 902 F.3d at 280 (internal quotation marks and citation omitted).

Here, the first three elements of Plaintiff's FDCPA claims are sufficiently alleged or can reasonably be inferred from Plaintiff's well-pled averments. *See* Compl. ¶¶ 3, 6-8, 11. The next question is whether Plaintiff has plausibly alleged the NRA Group's use of a practice that violated the Act. Specifically, the question is whether Plaintiff has alleged conduct by NRA Group that could plausibly amount to a violation of §§1692d(6), 1692e(10), or 1692e(11). We consider each provision in turn.

---

[2] The FDCPA defines a "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

[3] The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

[4] Under the FDCPA, a "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money ... [is] primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

5

*Section 1692d(6) (Count I)*

The FDCPA makes it unlawful for a debt collector to "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. This includes, among other things, "the placement of telephone calls without meaningful disclosure of the caller's identity." *Id*. §1692d(6). The term "meaningful disclosure" has not been statutorily defined. Nevertheless, in *Hart v. Credit Control, LLC*, the United States Court of Appeals for the Eleventh Circuit interpreted "meaningful disclosure" as requiring a debt collector's voice message to provide two types of information, *to wit*: "the name of the debt collection company[,]" and "the nature of the debt collection company's business, which can be satisfied by disclosing that the call is on behalf of a debt collection company[.]" 871 F.3d 1255, 1260 (11th Cir. 2017). This interpretation was cited approvingly by the Third Circuit Court of Appeals in *Levins*, 902 F.3d at 282.

Here, Plaintiff claims that the representative from NRA Group who contacted her on August 13, 2018 failed to provide any identifying information beyond giving the name "NRA Group" and stating, "We handle personal matters." Compl. ¶8. This information is arguably insufficient to inform the "least sophisticated debtor" that the call was from a debt collector and that it was an attempt to collect a debt. Accordingly, Count I of the complaint states a plausible claim under the FDCPA. *Cf. Levins*, 902 F.3d at 283 (holding that voicemail messages would not mislead the least sophisticated debtor because the messages gave some identifying information about the caller, stated that the call was from a debt collector, and stated that the call was an attempt to collect a debt).

6

*Section 1692e(11) (Count II)*

In related fashion, Section 1692e(11) of the FDCPA expressly prohibits debt collectors from failing to disclose in their initial oral communication with the consumer "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. §1692e(11). Based on the averments in the complaint, Plaintiff has plausibly pled a violation of §1692e(11), because the content of the alleged conversation did not inform her that the caller was attempting to collect a debt and that any information obtained from Plaintiff would be used toward that end. *See, e.g., Frischberg v. Glob. Serv. Grp., LLC*, No. 117CV4449NLHKMW, 2018 WL 3472626, at *3 (D.N.J. July 19, 2018) (plaintiffs stated a violation of §1692e(11) by alleging that, in at least one call, it was not disclosed that the call was from a debt collector; although defendant's agents indicated "they were calling to collect an alleged pay day loan," they "did not properly or completely identify themselves during each of its calls.").

*Section 1692e(10) (Count III)*

The FDCPA also makes it unlawful for a debt collector to "use . . . any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692(e)(10). "Violations of §1692e(10) usually include impersonating a public official, falsely representing that unpaid debts will be referred to an attorney, and misrepresenting the amount of the debt owed." *Levins*, 902 F.3d at 284 (internal quotation marks and citations omitted). "To state a claim under § 1692e, a false statement 'must be material when viewed through the least sophisticated debtor's eyes[,]' which means 'it has the potential to affect the decision-making process of the least sophisticated

7

debtor[.]'" *Id*. (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) (alterations in the original).

Here, Plaintiff avers that NRA Group violated 15 U.S.C. §1692e(10) when its agent stated, "[W]e only have to tell you who we are." Compl. ¶14 (Count III). Technically, this statement was untrue because, as discussed above, NRA Group's agent was obligated under the FDCPA to inform Plaintiff that she was calling on behalf of a debt collector for the purpose of attempting to collect a debt and that any information obtained from the debtor would be used toward that end. *See* 15 U.S.C. §1692e(11). Further, NRA Group's agent allegedly made this false statement while attempting "to obtain information concerning a consumer," *id.* §1692e(10) – specifically, Plaintiff's address or birthdate. Compl. ¶8. Arguably, the alleged misrepresentation is one that could potentially affect an unsophisticated debtor's decision-making process about whether to disclose the requested personal information to the debt collector. *See Jensen*, 791 F.3d at 421 (noting that the FDCPA was "designed to give debtors reliable information so that they can make informed decisions about how to address debts."). Accordingly, the Court is satisfied that Count III states a plausible violation of FDCPA §1692e(10).

On the other hand, this is not the type of misrepresentation typically associated with a §1692e(10) violation. Nor is the alleged misrepresentation one that would potentially affect an unsophisticated debtor's decision-making process about how she might address the underlying debt. As discussed below, these considerations affect the Court's damages calculations.

### B. Whether Default Judgment is Appropriate

Having determined that Plaintiff pled a plausible FDCPA claim, the Court must next consider whether entry of default judgment is otherwise appropriate under the test articulated

8

above. Initially, the Court must consider whether the Plaintiff will be prejudiced if default judgment is denied. Relevantly, "[a] plaintiff will be prejudiced absent a default judgment where, due to the defendant's continued failure to respond to plaintiff's claims, the plaintiff is left with no other recourse." *Cyprus Mines Corp. v. M & R Indus., Inc*., No. 14-4590, 2015 WL 1469529, at *8 (D.N.J. Mar. 30, 2015). Here, Plaintiff contends that NRA Group has failed to answer her claims, despite having been served with the complaint and request for entry of default. The Court finds Plaintiff will be prejudiced if default judgment is not entered against the Defendant.

The Court must next consider whether there is a litigable defense. As to this point, the Court notes that NRA Group appears to have been properly served, subject matter jurisdiction is present, and venue is appropriate. For the reasons previously discussed, the complaint adequately states a claim upon which relief can be granted. Moreover, because the FDCPA is a strict liability statute, the Defendant's intent is relevant only with respect to the issue of damages. *See Clark v. Capital Credit & Coll. Servs., Inc*., 460 F.3d 1162, 1175-76 (9th Cir. 2006); *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232, 1238-39 (5th Cir. 1997); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996). Because NRA Group was properly served but failed to appear in this action, it is unclear whether any meritorious defenses may exist.

Finally, the Court must consider whether NRA Group's delay is due to culpable conduct. Again, given that NRA Group was properly served, the Court infers that its default was the result of culpable conduct.

### C. Damages, Costs, and Attorney's Fees

Under the FDCPA, any debt collector who violates the statute is liable for actual damages sustained by the consumer as well as statutory damages up to a maximum of $1,000.00. 15

U.S.C. §1692k(a)(1) and (a)(2)(A); *see Gross v. Weinstein,* C.A. No. 14-786, LPS, 2018 WL 4567114, at *3 (D. Del. Sept. 24, 2018) (noting that "[s]tatutory damages in an amount of no more than $1,000 per plaintiff per lawsuit may . . . be awarded under the FDCPA"). A successful plaintiff is also entitled to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. §1692k(a)(3). In determining the amount of liability, the court shall consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Id*. §1692k(b)(1).

### 1. Damages

Plaintiff in this case is seeking damages in the full statutory amount of $1,000.00. It is not clear from the complaint how many times, or over what time span, NRA Group attempted to contact Plaintiff after the initial call on August 13, 2018. What can be inferred is that: (a) NRA Group attempted to contact Plaintiff on at least one or more occasions after August 13, 2018, (b) Plaintiff apparently declined to accept the call(s) or was unavailable to do so, and (c) Plaintiff felt concerned enough about the calls to engage an attorney. The complaint only alleges one substantive exchange between the Plaintiff and the Defendant, however; thus, the frequency and persistence of the Defendant's noncompliance was limited, even if we assume that the noncompliance was intentional. Giving due weight to these and other considerations outlined in this Memorandum Opinion, the Court finds it appropriate to award $750.00 in statutory damages.

### 2. Costs

Plaintiff is also entitled under the FDPDA to recover the costs of this lawsuit. Here, Plaintiff requests reimbursement of the $400.00 court filing fee and $65.00 that was paid to the

10

process server, for a total of $465.00 in costs. ECF No. 9-5. The Court finds that these costs are reasonable and appropriate and, accordingly, they will be awarded as requested.

### 3. Attorney's Fees

Finally, Plaintiff has requested $2,976.50 in counsel fees. Attorneys' fees are a mandatory remedy under the FDCPA because fee awards are "a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). "Only in unusual circumstances . . . may the court decline to award a fee; in such circumstances, it should formulate particularized findings of fact and conclusions of law explaining its decision." *Id*. at 114.

In calculating reasonable statutory attorneys' fees, the Court employs the "lodestar" approach. *See Brytus v. Spang & Co*., 203 F.3d 238, 242 (3d Cir. 2000). The lodestar amount is the initial estimate of a reasonable attorney's fee, calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Student Pub. Interest Research Grp. of N.J., Inc. v. AT&T Bell Labs*., 842 F.2d 1436, 1441 (3d Cir. 1988) (citations omitted). In determining a reasonable number of hours, the district court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Pub. Interest Research Grp. of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983)). A reasonable hourly rate is determined by reviewing the prevailing market rates in the community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). A prevailing market rate is the rate "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation[.]" *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (internal quotation

11

marks omitted) (first alteration in the original). The prevailing party bears the burden of establishing the reasonableness of both the time expended and the hourly rates. *See Hensley*, 461 U.S. at 433.

Although the lodestar figure is presumed to be the reasonable fee, the court has the discretion to adjust that fee. *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990). In adjusting the lodestar, the Court may consider twelve factors (*to wit,* the "*Johnson* factors").[5] *See Hensley*, 461 U.S. at 434. A party seeking adjustment of the lodestar bears the burden of proving the necessity of the adjustment. *See Rode,* 892 F.2d at 1183.

Here, in support of her request for attorneys' fees, Plaintiff has submitted a Declaration of Robert Amador, an attorney employed by the firm Centennial Law Offices, located in Santa Barbara, California. ECF No. 9-4. Mr. Amador has been a practicing attorney in the state of California for at least nine years. *See* ECF No. 3-2. His practice involves, "almost exclusively," representing plaintiffs in cases brought under the FDCPA; to that end, he has represented hundreds of plaintiffs in such actions throughout the country. ECF No. 9-4, ¶¶2, 4. Mr. Amador attests that his billing rate in this case, consistent with his general billing rate, is $300 per hour, while paralegal/staff time is billed at $50 per hour. Id. ¶5. Along with Mr. Amador's declaration, Plaintiff has submitted excerpts from the 2015-2016 United States Consumer Law Attorney Fee Survey Report, which suggests that Mr. Amador's billing rate is in line with the rates charged by experienced counsel for similar types of work performed within this judicial

---

[5] These include: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Ga. Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974).

district.  ECF No. 9-3 at 34.  The Court also takes judicial notice of the fact that that Mr. Amador has successfully prosecuted at least one other FDCPA case in the Erie Division of this judicial district, and was awarded fees based on the same $300/hour rate that he charged in this case.  *See Austin v. Trinity Hope Assocs., LLC*, No. 1:151-cv-101-BR (W.D. Pa.) (ECF Nos. 17 and 20).  Collectively, these factors lead the Court to conclude that Mr. Amador's billing rate is reasonable and appropriate in light of his level of experience and specialization, this type of action, and the geographical area where the Court sits.

In addition to the foregoing, Plaintiff has submitted her attorney's billing records, which show that 8.95 hours of attorney time and 5.73 hours of paralegal time were reasonably expended on this case.  ECF No. 9-5.  The Court notes one small inaccuracy, however, relative to the lodestar calculation:  based on Mr. Amador's billing records and billing rate, the lodestar figure should be $2,971.50 rather than $2,976.50.  This minor discrepancy aside, after reviewing the billing records and Mr. Amador's declaration, and having considered the *Johnson* factors, the Court finds that Plaintiff's attorney's fee request is reasonable.  Although the fee award is greater than the statutory damages award in this case, this is not surprising, given that statutory damages are capped at $1,000.00 and Congress has not amended that amount since 1977.  If fee awards commensurate with the amount requested could not be awarded, it would be difficult for any consumer to prosecute FDCPA cases, thereby frustrating the statute's remedial purpose.  Accordingly, the Court finds a fee award of $2,971.50 to be reasonable on balance.

**IV. CONCLUSION**

Based upon the foregoing reasons, Plaintiff's motion for entry of default judgment against NRA Group, LLC will be granted. The Court will award $750.00 in damages, $2,971.50 in attorney's fees, and $465.00 in costs, for a total judgment of $4,186.50.

Susan Paradise Baxter
United States District Judge

14